**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| BONNIE J. ZELEDON, | ) No. ED CV 05-48-PLA |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| | ) |
| JO ANNE B. BARNHART, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on January 19, 2005, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on February 18, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on January 3, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on March 24, 1963.  [Administrative Record ("AR") at 49, 130.] She has a high school education and past relevant work experience as a property manager and dental assistant.  [AR at 49-51, 213, 218, 229-31.]

On November 16, 1999, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she had been unable to work since May 5, 1998, due to, among other things, arthritis in her hip, degenerative disc disease in her back, headaches, and pain in her pelvis, right leg, and shoulder. [AR at 130-32, 211-12, 768-71.]  After her applications were denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on March 27, 2001, at which plaintiff appeared with counsel and testified on her own behalf. [AR at 45-75.] A subsequent hearing was held on September 4, 2001, at which a medical expert testified. [AR at 76-107.] On January 30, 2002, the ALJ determined that plaintiff was not disabled as she maintained the ability to perform her past relevant work.  [AR at 24-32.] When the Appeals Council denied review on December 2, 2004, the ALJ's decision became the final decision of the Commissioner.  [AR at 7-9.]


## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

1 as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

2 Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court

3 must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala,

4 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

5

6                                                  IV.

7                              **THE EVALUATION OF DISABILITY**

8          Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

9 to engage in any substantial gainful activity owing to a physical or mental impairment that is

10 expected to result in death or which has lasted or is expected to last for a continuous period of

11 at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

12

13 **A.      THE FIVE-STEP EVALUATION PROCESS**

14          The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

15 whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

16 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must

17 determine whether the claimant is currently engaged in substantial gainful activity; if so, the

18 claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in

19 substantial gainful activity, the second step requires the Commissioner to determine whether the

20 claimant has a "severe" impairment or combination of impairments significantly limiting her ability

21 to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.

22 If the claimant has a "severe" impairment or combination of impairments, the third step requires

23 the Commissioner to determine whether the impairment or combination of impairments meets or

24 equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

25 Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id.

26 If the claimant's impairment or combination of impairments does not meet or equal an impairment

27 in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

28 sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

1    and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform

2    past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

3    case of disability is established.  The Commissioner then bears the burden of establishing that

4    the claimant is not disabled, because she can perform other substantial gainful work available in

5    the national economy.  The determination of this issue comprises the fifth and final step in the

6    sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966

7    F.2d at 1257.

8

9    **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

10            In this case, at step one, the ALJ concluded that plaintiff has not engaged in any

11    substantial work activity since the alleged onset of her disability.  [AR at 25, 30.]  At step two, the

12    ALJ concluded that plaintiff has the following severe impairments: history of hip and pelvic

13    fractures, degenerative disc disease, derangement of the temporomandibular joint, disc bulge at

14    L4-5, mitral valve prolapse, and urinary incontinence.  [AR at 27.]  At step three, the ALJ found

15    that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the

16    Listings.  [AR at 27, 31.] The ALJ further determined that plaintiff retains the residual functional

17    capacity[1] to lift and carry 25 pounds occasionally, 10 pounds frequently and 5 pounds

18    continuously; sit, stand and/or walk for one hour at a time, for a total of eight hours of sitting, and

19    six hours of standing or walking, during an eight hour workday.[2]  [AR at 30-31.]  At step four, the

20    ALJ determined that plaintiff is able to perform her past relevant work.   [AR at 30-31.]

21    Accordingly, the ALJ found plaintiff not disabled.  [Id.]

22

23    _____

24    [1]    Residual functional capacity ("RFC") is what a claimant can still do despite existing
       exertional and nonexertional limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir.

25    1989).

26    [2]    According to the ALJ, plaintiff is also able to use her hands for repetitive actions as in
       pushing and pulling of arm controls, simple grasping and fine manipulation, and is able to use her

27    left leg for repetitive movements.  She can occasionally squat and crawl, frequently bend and
       climb, and continuously reach; is restricted from working at unprotected heights; and is mildly

28    restricted from being around moving machinery. [AR at 30.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends the following: (1) the ALJ failed to properly assess her credibility; (2) because she has non-exertional impairments, the ALJ erred by relying on the Grids and not consulting a vocational expert; (3) the ALJ incorrectly found that plaintiff's past work as a dental assistant constitutes substantial gainful employment; (4) the ALJ erred by failing to recontact her treating physician; (5) the ALJ failed to develop the record regarding her depression; and (6) the medical expert's testimony is not substantial evidence.  Joint Stipulation ("Joint Stip.") at 2-3, 23. For the reasons explained below, the Court concludes that remand is warranted.

In support of plaintiff's argument regarding the ALJ's alleged failure to rely on the testimony of a vocational expert as opposed to the Grids, plaintiff points out, inter alia, that the ALJ mischaracterized the medical opinion of treating physician Dr. Ralph Steiger.  Joint Stip. at 13. Specifically, plaintiff asserts that in concluding that Dr. Steiger only restricted plaintiff to heavy work, the ALJ erred by ignoring Dr. Steiger's other articulated restrictions, and that the ALJ failed to properly translate Dr. Steiger's conclusions made for workers' compensation purposes into appropriate terminology for Social Security cases.  Joint Stip. at 13.

The evidence relevant to plaintiff's contention shows that on May 27, 1997, Dr. Steiger, an orthopedic surgeon, performed a "complex orthopedic Qualified Medical Evaluation" for workers' compensation purposes after plaintiff had sustained injuries in a work-related automobile accident. [See AR at 391-411.] Dr. Steiger diagnosed plaintiff with the following: (1) fracture of the pelvis; (2) cervical spine sprain with radiculitis; (3) lumber spine sprain with radiculitis; (4) left temporomandibular joint abnormality; and (5) fracture of the right acetabulum. [AR at 406.]  After finding plaintiff's condition to be "permanent and stationary,"[3] Dr. Steiger assessed the following work restrictions: no heavy lifting, repeated bending and stooping; no repetitive squatting,

---

[3]    In workers' compensation parlance, a disability is deemed permanent and stationary when "the employee has reached maximal medical improvement, meaning his or her condition is well stabilized, and unlikely to change substantially in the next year with or without medical treatment." Cal.Code Regs. tit. 8, § 10152.

climbing, crawling or kneeling; no prolonged standing or walking; no continuous neck movement or downward gaze. [AR at 409.]

At the time of Dr. Steiger's evaluation, plaintiff was working as a property manager for a complex of town homes. [AR at 394, 409.] At the March 2001 hearing, plaintiff testified that she stopped working in May 1998 because she was unable to continue to meet the physical demands of the job. [AR at 71-72.] Specifically, she testified that her pain was limiting her ability to walk "very far," climb stairs and ladders, and kneel. [AR at 72.]

In the hearing decision, the ALJ took note of the list of limitations set forth by Dr. Steiger, and stated that although his examination took place before the alleged onset date of disability, he "noneth[e]less saw [plaintiff] in connection with her musculoskeletal ... complaints, and concluded that [she] was restricted from essentially heavy work activity." [AR at 26, 29.] The ALJ went on to assess plaintiff's RFC as described supra. In doing so, the ALJ gave the greatest weight to the opinion of the medical expert, who set forth limitations identical to those in the RFC. [See AR at 738.] Those limitations were also, for the most part, consistent with the restrictions found by the State Agency non-examining physicians. [AR at 29-30, 497-504.]

In evaluating medical opinions, the case law and regulations distinguish among three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; Lester, 81 F.3d at 830. Because plaintiff was examined by Dr. Steiger in connection with the evaluation of her workers' compensation claim, his opinion is treated as the equivalent of a non-treating, examining physician. See Carr v. Apfel, 2003 WL 132534, at *2 (N.D.Cal. Jan. 9, 2003). When contradicted by another doctor, the ALJ may only reject the opinion of an examining physician for specific and legitimate reasons that are supported by substantial evidence. Regennitter v. Commissioner of Social Sec. Admin., 66 F.3d 1294, 1298-99 (9th Cir. 1999).

As an initial matter, the Court notes that, although Dr. Steiger's restrictions of no "prolonged" standing and walking were used in connection with plaintiff's workers' compensation case, the ALJ was still required to evaluate this terminology like any other medical opinion. See

6

Booth v. Barnhart, 181 F.Supp.2d 1099, 1105 (C.D.Cal. Jan. 22, 2002); see also Coria v. Heckler, 750 F.2d 245, 248 (3rd Cir. 1984) ("the ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim"); Bosley v. Shalala, 879 F.Supp. 296, 304 (W.D.N.Y. March 9, 1995) ("the ALJ was *not* entitled to ... disregard, or neglect to articulate reasons for rejecting, either the opinions or the objective medical findings contained in" the treating doctor's report, even though the report was prepared for workers' compensation purposes). Accordingly, the ALJ must "'translate' [workers' compensation] terms of art" to correspond to Social Security terminology. Booth, 181 F.Supp.2d at 1106.  The translation need not be explicit, but "it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence."  Id.

Despite the fact that Dr. Steiger did not define what he meant by his use of the term "prolonged" in imposing plaintiff's standing and walking restrictions, this reference has been reasonably interpreted to mean a duration lasting for "at least half of the work day."  See Booth, 181 F.Supp.2d at 1108 (stating "[i]t is logical to assume that [the treating doctor's] reference to 'prolonged' sitting means sitting at least half of the work day").  Assuming that interpretation is correct, the medical expert's opinion -- as well as the ALJ's determination of plaintiff's functional capacity -- that plaintiff would be able to stand and/or walk for six hours conflicts with Dr. Steiger's contrary findings.  See id. (stating "it would be difficult to argue convincingly that sitting for six hours during an eight-hour day does not qualify as 'prolonged' sitting").

Here, in determining the RFC, the ALJ relied upon the medical expert's opinion that plaintiff could stand and/or walk for six hours out of the workday, which the ALJ found to be consistent with the assessments offered by the State Agency medical consultants.  In doing so, the ALJ effectively rejected Dr. Steiger's opinion regarding plaintiff's work limitations with respect to standing and walking.  See Smith v. Massanari, 139 F.Supp.2d 1128, 1133 (C.D.Cal. 2001) (reliance on one physician's opinion in making a finding, which differs from that of another

physician, is an implicit rejection of the latter).  By concluding from Dr. Steiger's assessment that plaintiff was only prohibited from engaging in "heavy work," the ALJ impermissibly ignored the remaining restrictions set forth by Dr. Steiger.

Because the ALJ did not expressly interpret or discuss the apparent conflict in the medical evidence between Dr. Steiger's opinion and the opinions of the medical expert and State Agency physicians, or otherwise explain why plaintiff was capable of standing and/or walking for six hours despite Dr. Steiger's findings, it follows that the ALJ did not provide any specific and legitimate reasons based on substantial evidence in the record for rejecting Dr. Steiger's opinion.  See Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason [citation omitted], an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.").  Accordingly, remand on this issue is appropriate to allow the ALJ to properly interpret and weigh Dr. Steiger's opinion regarding plaintiff's functional limitations.

Because the ALJ's consideration of Dr. Steiger's opinion may impact other portions of the disability analysis, such as the formulation of the RFC and the credibility determination, plaintiff's remaining arguments will not be addressed herein.

/

/

/

/

/

/

/

/

/

/

/

/

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F. 3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to: (1) evaluate and weigh Dr. Steiger's opinion regarding plaintiff's work restrictions; and (2) if Dr. Steiger's opinion is not properly rejected, reconsider plaintiff's RFC in light of those restrictions. The ALJ is directed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **GRANTED**; (2) the decision of the Commissioner is **REVERSED**; and (3) this action is **REMANDED** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: May 26, 2006                              /S/
                                    _____
                                          PAUL L. ABRAMS
                                UNITED STATES MAGISTRATE JUDGE